UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORINIA

TAMMY A.,[1]

                         Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,[2]

                         Defendant.

Case No.:  24cv1452-CAB (MSB)

**REPORT AND RECOMMENDATION**

     This Report and Recommendation is submitted to the Honorable Cathy Ann Bencivengo, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  On August 15, 2024, Plaintiff Tammy A. ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") final adverse decision.  (ECF No. 1.)  Now pending before

---

[1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

[2] Frank Bisignano became the Commissioner of Social Security in on May 6, 2025.  Accordingly, he should be substituted as the defendant in this lawsuit.  See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party").

the Court is Plaintiff's opening brief, claiming the Administrative Law Judge ("ALJ") erred when he denied Plaintiff's application for disability insurance benefits.  (ECF No. 12 ("Mot.").)  On February 18, 2025, the Commissioner filed an opposition.  (ECF No. 17 ("Opp'n").)  Plaintiff then filed a reply on March 10, 2025.  (ECF No. 20 ("Reply").)

## I.    PROCEDURAL BACKGROUND

On July 18, 2018, Plaintiff filed an application for social security benefits under Title II and Title XVIII of the Social Security Act, alleging an inability to work beginning August 30, 2017.  (AR 304-305.)  Plaintiff also filed an application for supplemental security income under Title XVI of the Social Security Act on July 17, 2018.  (AR 299-303.) The Commissioner initially denied both applications on August 21, 2018, and again upon reconsideration on July 21, 2020.  (AR 123-26, AR 130-34.)  On September 25, 2020, Plaintiff requested an administrative hearing.  (AR 135-36.)  On September 9, 2021, ALJ James Delphey held an initial telephonic hearing where he directed Plaintiff to attend additional internal medical and psychological examinations.  (AR 50–70.)  The ALJ held a subsequent telephonic hearing on October 4, 2022, during which Plaintiff, appearing with counsel, and vocational expert, Jeff Beeman, testified.  (AR 13-49.)

The ALJ issued an unfavorable written decision on April 4, 2023, finding Plaintiff had not been under disability from August 30, 2017, through the date of the decision. (AR 99-115.)  On May 8, 2023, Plaintiff requested review of the ALJ's decision.  (AR 297-98.)  The Appeals Council denied Plaintiff's request for review on December 22, 2023, finalizing the ALJ's decision.  (AR 5-10.)  This timely civil action followed.

## II.    SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  See 20 C.F.R. § 404.1520.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, August 30, 2017.  (AR 105.)  At step two, the ALJ found Plaintiff has the following severe impairments that significantly limit her ability to perform basic work activities: benign pituitary adenoma, vestibular disturbance syndrome with migraines, status post

1  remote right ankle injury and surgery, and obesity.  (Id.)  The ALJ found Plaintiff's

2  medically determinable impairments of intermittent tinnitus, hypertension, and sleep

3  apnea were non-severe impairments that did not significantly limit Plaintiff's ability to

4  work.  (Id.)  Further, the ALJ determined Plaintiff's medically determinable mental

5  impairment—adjustment disorder with depression and anxiety—was non-severe

6  because it minimally limited Plaintiff's ability to perform basic mental work activities.[3]

7  (AR 106.)

8         At step three, the ALJ found Plaintiff did not have an impairment, or combination

9  of impairments, that met or medically equaled the severity of one of the listed

10  impairments in the Commissioner's Listing of Impairments.  (AR 108.)  See also 20 C.F.R.

11  Pt. 404, Subpt. P, App. 1.  After consideration of the entire record, the ALJ found:

> [Plaintiff] has the residual functional capacity to perform light work as
> defined in 20 CFR 404.1567(b) and 416.967(b) except she has these non-
> exertional limitations: she can occasionally climb ramps and stairs; never
> climb ladders, ropes or scaffolds; and [can] occasionally balance, stoop,
> kneel, crouch, and crawl. She needs to avoid concentrated exposure to
> extreme temperatures, loud noise, vibration, or strobe or flashing lights.
> She needs to avoid work at unprotected heights or around dangerous
> moving machinery. She can occasionally drive a motor vehicle.

18  (AR 108.)  The ALJ found Plaintiff's symptoms were consistent with the objective medical

19  requirements.  (Id.)  At step four, the ALJ determined Plaintiff was "capable of

20  performing past relevant work as a personal attendant, user support analyst, order

21  clerk, policy information clerk, and solicitor/call center attendant."  (AR 113.)  The ALJ

22  also noted Plaintiff's residual functional capacity ("RFC") permitted her to pursue other

23  readily available unskilled work.  (Id.)  The ALJ concluded Plaintiff was not under

24  disability as defined by the Social Security Act from August 30, 2017, through the date of

25  his decision.  (AR 115.)

26

27  ─────────────────

28  [3] In making this determination, the ALJ found Plaintiff's "medically determinable mental impairments cause no more than a 'mild' limitation" in the broad functional areas.  (AR 108.)

24cv1452-CAB (MSB)

### III.    DISPUTED ISSUES

Plaintiff raises two issues as grounds for reversal:

1. Whether the ALJ failed to adequately evaluate Plaintiff's vestibular migraines as medically equivalent to listing 11.02B and failed to account for all limitations resulting from migraines in the RFC.

2. Whether the ALJ failed to find that Plaintiff's depression and anxiety were severe impairments and failed to account for any mental limitations in the RFC.

(Mot. at 9.)

### IV.    STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision.  See 42 U.S.C. § 405(g).  The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision.  Id.  The reviewing court may also remand the case to the Social Security Administration for further proceedings.  Id.

The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error.  Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)).  The Supreme Court has said substantial evidence means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)).  Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).

1    The ALJ's decision may also be reversed if it applies the wrong legal standard, but

2   the reviewing court "may not reverse an ALJ's decision on account of an error that is

3   harmless."  Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015)

4   (quoting Molina, 674 F.3d at 1111).

### V.    DISCUSSION

### A.    Whether the ALJ Failed to Adequately Evaluate Plaintiff's Vestibular Migraines as Medically Equivalent to Listing 11.02B and Failed to Account for All Limitations Resulting from Migraines in the RFC

#### 1. Summary of Parties' Arguments

10    Plaintiff's argument essentially has four parts.  First, Plaintiff argues that the ALJ

11   should have evaluated her migraines at step three even though she did not originally

12   argue that any of her impairments met or medically equaled a listed impairment.  (Mot.

13   at 10-11.)  Second, she argues that the ALJ mischaracterized evidence related to her

14   vestibular disturbance syndrome with migraines and the effectiveness of migraine

15   treatment.  (Id. at 11.)  Third, the ALJ failed to consider elements relevant to establishing

16   the medical equivalence of Listing 11.02B.  (Id. at 13.)  Fourth, the RFC was deficient

17   because it did not adequately account for her experiences with vestibular migraine.  (Id.

18   at 19.)

19    The Commissioner disagrees because Plaintiff has the burden to show that her

20   migraines were medically equivalent to a listed impairment, but she failed to do so.

21   (Opp'n at 6-7.)  For a headache to medically equal a listing, evidence from a medical

22   consultant, psychological consultant, medical expert, or Appeals Council medical

23   support staff is required.  (Id.)  The Commissioner also purports that the ALJ ultimately

24   found Plaintiff's severe impairment of vestibular disturbance syndrome was inconsistent

25   with objective medical evidence and, thus, not disabling.  (Id. at 8.)  The inconsistencies

26   thus rendered any possible error at step three to be harmless.  (Id.)  Consequently, the

27   RFC adequately accounts for all credible symptoms.  (Id. at 11.)

28   //

**2. Applicable Law**

At step three, the ALJ considers whether a claimant has an impairment or combination of impairments that meet or medically equal the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  See 20 C.F.R. § 404.1520(a)(4)(iii).  The mere diagnosis of a listed condition does not establish that a claimant "meets" a listed impairment.  See 20 C.F.R. § 416.925(d); Young v. Sullivan, 911 F.2d 180, 183–84 (9th Cir. 1990).  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  Sullivan v. Zebley, 493 U.S. 521, 530 (1990); see also 20 C.F.R. § 416.925(d).  If a claimant has an impairment that meets or equals a listed impairment and meets the duration requirement, disability is presumed, and benefits are awarded.  20 C.F.R. § 416.920(d).

Although a claimant bears the burden of proving that she has an impairment that meets or equals the criteria of a listed impairment, the ALJ is required to adequately evaluate and discuss the evidence that supports his conclusion before concluding that the claimant's impairments fail to meet or equal a listing.  See Lewis, 236 F.3d at 513; Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).  The ALJ satisfies this requirement by adequately discussing the evidence supporting the step three determination anywhere in his decision.  Kennedy v. Colvin, 738 F.3d 1172, 1178 (9th Cir. 2013).  Additionally, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."  Id. (citing Burch, 400 F.3d at 683).  The ALJ is also not required "to state why a claimant failed to satisfy every different section of the listing of impairments."  Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990).

**3. Analysis**

The ALJ's step three analysis contained a two-sentence summary:

The claimant does not argue that her impairment or combination of impairments meet or medically equal a listed impairment. The undersigned has reviewed the medical record and find[s] that the claimant's impairments do not meet or medically equal listings 1.18, 9.00, 11.05 or any other listing.

(AR 108.)  Plaintiff claims that the ALJ was required to analyze whether her vestibular disturbance syndrome with migraine was medically equivalent to a listed impairment, specifically Listing 11.02B.

Plaintiff does not dispute that she never explicitly argued before the ALJ that her migraines were medically equivalent to Listing 11.02B, and she does not provide legal authority that requires that the ALJ must analyze medical equivalency to <u>every</u> possible listing.  According to <u>Kennedy</u>, the ALJ was not required to compare Plaintiff's impairments to any listing that Plaintiff failed to present herself.  <u>See</u> 738 F.3d at 1178. "The regulations merely require the Secretary to 'review the symptoms,' 20 C.F.R. § 404.1526, and make specific findings essential to the conclusion." <u>Abreu v. Astrue</u>, 303 F. App'x 556, 557 (9th Cir. 2008) (quoting <u>Gonzalez</u>, 914 F.2d at 1200).

Although Plaintiff did not present <u>any</u> medical equivalence argument to the ALJ and no medical examiners or consultants appeared to find any of her impairments could have met a listing,[4] the ALJ still compared Plaintiff's impairments to Listings 1.18, 9.00, and 11.05.  Listing 1.18 pertains to an abnormality of a major joint(s) in any extremity; Listing 9.00 refers to endocrine disorders; and Listing 11.05 addresses benign brain tumors.  In <u>Abreu</u>, the Ninth Circuit found that the ALJ was under no obligation to compare the claimant's impairments to a listing that claimant never argued before him. 303 F. App'x at 557.  The ALJ in that case noted that no treating or examining physicians mentioned findings for equivalency and only focused on claimant's argument regarding listing 1.04A.  <u>Id.</u>  The claimant appealed the decision and argued the ALJ should have also compared his impairments to 1.04B and 1.04C, but the Ninth Circuit disagreed.  <u>Id.</u>

---

[4] After review of the record, it appears Exhibit 21F (AR 1080) is the only document that discusses possible equivalence to the listings.

1  If the ALJ is not obligated to evaluate and discuss all subparts of one listing that was

2  presented to him, he certainly is not obligated to assess an entirely different listing that

3  was never brought to his attention.

4         Despite Plaintiff's best efforts, she cannot avoid the fact that the ALJ was not

5  required to specifically compare her impairments to Listing 11.02B without first

6  presenting her argument.  Plaintiff spends a sizable portion of her Reply explaining how

7  an opinion from an acceptable medical source confirming medical equivalence should

8  "not eliminate the ALJ's duty to consider medical equivalence of a listing at Step 3."

9  (Reply at 5-8.)  She argues that it would be against public policy if "the ALJ would not

10  need to consider the medical equivalency of Listing 11.02(B) even if the SSA doctors did

11  not consider it and even if they did not have an opportunity to review the complete

12  record."  (Id. at 7.)  If such a practice was accepted, she insists that the ALJ would not be

13  obligated to perform an equivalency evaluation even if "Plaintiff submitted medical

14  records sufficient for [a] *prima facie* showing that the severity of her symptoms could

15  have satisfied the medical equivalence of Listing 11.02(B) . . . ."  (Id.)  However, Plaintiff's

16  hypothetical is missing a crucial initial step; it is not enough for Plaintiff to merely submit

17  medical records that would show medical equivalence, she must also present the case

18  to the ALJ.  See Kennedy, 738 F.3d at 1178 ("[a]n ALJ is not required to . . . compare

19  [claimant's impairments] to any listing in an equivalency determination, unless the

20  claimant presents evidence in an effort to establish equivalence") (emphasis added).  As

21  Plaintiff points out, the ALJ cannot "play doctor" [Reply at 8], so he cannot be expected

22  to know of every possible listing that may be equivalent to her impairments and no legal

23  authorities require him to do so.  Although Plaintiff was represented by different

24  counsel at the time [see AR 102], Plaintiff is not excused from her obligation to present

25  her case to the ALJ at the appropriate time.  Indeed, the ALJ held two hearings to allow

26  Plaintiff to supplement the record with an internal medical exam and psychological

27  exam.  (AR 75-76.)  Furthermore, the ALJ provided much leeway in keeping the record

28

24cv1452-CAB (MSB)

open after both hearings because of his strong preference for "decid[ing] a case on a full record . . . ." (AR 25.)

Of course, Plaintiff and her counsel are not necessarily medical experts either, but that is why the ALJ must rely on "objective medical evidence from an acceptable medical source." SSR 19-4p. The ALJ is not allowed to only "use a person's statement of symptoms, a diagnosis, or a medical opinion to establish the existence of a medically determinable impairment." Id.

Plaintiff's reading of HALLEX §I-2-5-34(A)[5] is flawed. (Reply at 7-8.) The court in DuBois v. Berryhill dealt with a similar issue where the plaintiff similarly argued that HALLEX §I-2-5-34(A) required the ALJ to order a medical expert opinion to test medical equivalence. No. 1:17-CV-00076-JDL, 2017 WL 6000340, at *3 (D. Me. Dec. 3, 2017). However, the court in DuBois rejected that interpretation and found "that an ALJ must consult with a medical expert only when considering finding that a claimant's impairments medically equal a listing, not when he or she is considering finding that they do not." Id. This Court agrees. The ALJ only needs to order a medical expert opinion to establish that Plaintiff's impairments were equivalent to Listing 11.02B because his findings must be supported by evidence from an acceptable medical source. See SSR 19-4p. However, ALJs are not required to consult with a medical expert to determine whether the claimant's impairments equal listing. DuBois, 2017 WL 6000340, at *3. Accordingly, the ALJ's conduct was not erroneous, and the Court may end its analysis there.

Even if the Court were to entertain Plaintiff's equivalency argument, Plaintiff has not met her burden in establishing that her migraines were medically equivalent to Listing 11.02B. For Plaintiff's second argument, she claims that the ALJ mischaracterized evidence related to her vestibular disturbance syndrome with migraines and the

---

[5] The Program Operations Manual System has since renumbered HALLEX §I-2-5-34 to HA 01250.034. See HA 01250.034, https://secure.ssa.gov/apps10/poms.nsf/lnx/2501250034 (last visited June 12, 2025).

24cv1452-CAB (MSB)

effectiveness of its treatment.  (Mot. at 11.)  She claims that the ALJ made inaccurate statements, such as "the record [regarding her vestibular disturbance syndrome with migraine] reveals relatively stable findings" and the "claimant reported improved headaches with less frequency . . . ."  (Id. (quoting AR 109-10).)  Plaintiff argues that these statements were misleading because, while "some of the medical records noted that her migraines were improving in frequency and severity with treatment, they did not improve to such a degree as to no longer be disabling."  (Id.)  She presented evidence from the medical record that showed the severity of her migraines decreased from "severe to moderate" after taking prescribed medication but that she was still experiencing headaches at least one to two times a week, and sometimes daily.  (Id. at 12.)

The Court finds that the ALJ did not mischaracterize the medical record.  An ALJ is responsible for interpreting the evidence, and the ALJ considered Plaintiff's self-reports of ongoing headaches but found it did not amount to disability because other records indicated normal findings.  See Tommasetti, 533 F.3d at 1038 (the ALJ's rational interpretation must be upheld even when evidence is susceptible to more than one interpretation).  Plaintiff's cherry-picked record does not negate the ALJ's ultimate finding that her vestibular migraines were relatively stable.

For Plaintiff's third argument, to show the ALJ erred at step three, Plaintiff must identify the listings she believes she meets or equals and set forth evidence that would support "the diagnosis and findings of a listed impairment."  Burch, 400 F.3d at 683. The impairment must meet all the specified medical criteria in the listing.  Zelby, 493 U.S. at 530.  Listing 11.02B requires Plaintiff to establish that she experiences "[d]yscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C)."  20 C.F.R. pt. 404, Subpt. P,App. 1, § 11.02B.  Dyscognitive seizures are characterized by an "alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms

1  (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as

2  gestures or verbal utterances) may occur." <u>Id.</u>, 11.00H1b.

3       SSR 19-4p provides further guidance in assessing medical equivalency to 11.02B:

4  To evaluate whether a primary headache disorder is equal in severity and

5  duration to the criteria in 11.02B, we consider: a detailed description from an AMS [acceptable medical source] of a typical headache event, including all

6  associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events;

7  adherence to prescribed treatment; side effects of treatment (for example, many

8  medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be

9  associated with the primary headache disorder or effects of its treatment, such as

10 interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that

11 affects daytime activities, or other related needs and limitations).

12 SSR 19-4p at ¶ 8.

13      As an initial matter, Plaintiff does not present any evidence similar to what is

14 described above.  That alone is reason enough to find the ALJ did not err.  <u>Burch</u>, 400

15 F.3d at 683.  However, Plaintiff argues that she experiences migraines that are

16 equivalent to dyscognitive seizures.  She claims her migraines cause pain that "feels like

17 a knife."  (Mot. at 13-14 (citing AR 787).)  Her headaches are in the "mid-occipital region,

18 central region, and bilateral periorbital region."  (<u>Id.</u> at 14 (citing AR 787).)  She also

19 reported vestibular migraines, fatigue, and poor memory.  (<u>Id.</u> (citing AR 1106).)  She

20 was evaluated for persistent ongoing chronic dizziness and disequilibrium.  (<u>Id.</u> (citing AR

21 1134).)

22      The Court is unconvinced that Plaintiff's theory would have made a difference in

23 the ALJ's decision.  None of the evidence presented by Plaintiff shows that she

24 experiences "an alteration of consciousness" or anything equal to blank stares, changes

25 of facial expression, and automatisms.  "A claimant cannot qualify for benefits under the

26 'equivalence' step by showing that the overall functional impact of his unlisted

27 impairment or combination of impairments is as severe as that of a listed impairment."

28 <u>Kennedy</u>, 738 F.3d at 1176 (citing <u>Zelby</u>, 493 U.S. at 531).  In <u>Kennedy</u>, the claimant

attempted to argue that, although his IQ score disqualified him under one of the components for Listing 12.05C, the combined severity of his impairments compensated for the one-point difference in IQ score.  Id.  However, the Court found that the claimant had to show his impairments "medically" equaled the requisite IQ score.  Id at 1174.  Plaintiff argues that the pain, sensitivity to light, and being knocked out from her migraines "could be equivalent" to an alteration of consciousness or blank staring. (Mot. at 14.)  But, Plaintiff's belief that her impairments "could be" equivalent to a listing is purely conjectural and insufficient; she must show it is medically equivalent.  The Court finds that Plaintiff does not meet her burden here.

Although the Commissioner puts Plaintiff's subjective symptom testimony at issue, the Court finds such analysis unnecessary.  The ALJ found that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" [AR 109], but even if he took Plaintiff's testimony at face value, it still would not have proven her symptoms were medically equivalent.  See SSR 19-4p ("We also will not make a finding of disability based on a person's statement of symptoms alone.")

Because Plaintiff has not shown that she experiences dyscognitive seizures or anything medically equivalent to that, she has not met her burden in showing that her impairments are equal to Listing 11.02B.  The ALJ did not err here.

Finally, Plaintiff believes that the RFC should include greater limitations to account for her severe migraines.  (Mot. at 18-20.)  Although Plaintiff makes the bold statement that "courts have consistently held that when time off task or absenteeism is supported by the evidence of record, it should be included in the RFC" [id.], Plaintiff again has not provided any legal authority to support her contention, and the Court has not found any.  Instead, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."  Rounds, 807 F.3d at 1006 (citing Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir.2008)).  Here, the ALJ thoroughly discusses Plaintiff's vestibular

24cv1452-CAB (MSB)

disturbance syndrome with migraine, recognizing Plaintiff's chronic fatigue and dizziness. (AR 109-11.) The ALJ then specifically concludes:

> [T]he claimant's vestibular disturbance syndrome with migraine limits the claimant to work at light exertional level, and renders it unsuitable for her to climb ladders, ropes, or scaffolds. She is able to occasionally climb ramps and stairs. She is able to occasionally balance, stoop, kneel, crouch, and crawl. She needs to avoid work at unprotected heights or around dangerous moving machinery. She is able to occasionally drive a motor vehicle.

(AR 111.) Substantial evidence supports the current RFC as it pertains to Plaintiff's migraines, and the Court has not found any legal error here.

Based on the foregoing, the Court finds that the ALJ's step three assessment and RFC of Plaintiff's vestibular disturbance syndrome with migraine was supported by substantial evidence and contains no legal error.

**B.** **Whether the ALJ Failed to Find that Plaintiff's Depression and Anxiety were Severe Impairments and Failed to Account for Any Mental Limitations in the RFC**

Plaintiff's second issue contains two discrete parts. First, Plaintiff argues that the ALJ's finding that Plaintiff's "medically determinable mental impairments of adjustment disorder with depression and anxiety" were non-severe was not supported by substantial evidence. (Mot. at 21-27.) Second, the ALJ failed to consider those mental impairments—or explain why such consideration was excluded—in the RFC assessment. (Id. at 26.) Plaintiff further contends the erroneous RFC resulted in incomplete hypothetical questions to the vocational expert ("VE"). (Id. at 27.)

In response, the Commissioner argues substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were non-severe. (Opp'n at 13.) The Commissioner contends that the ALJ is not required to include an express finding for non-severe mental impairments in the RFC determination. (Id. at 19.) The Commissioner further maintains the ALJ captured Plaintiff's mental impairments in the

24cv1452-CAB (MSB)

1  hypothetical questions because the ALJ posed questions considering Plaintiff's non-

2  exertional limits.  (Id. at 20-21.)

3  **2. Applicable Law**

4  To determine if an individual qualifies as disabled, the ALJ applies a five-step

5  sequential process.  20 C.F.R. § 404.1520(a)(4); see also Garrison v. Colvin, 759 F.3d 995,

6  1010 (9th Cir. 2014).

7  At step two, the ALJ determines the severity of a claimant's physical or mental

8  impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii).  The ALJ must apply a "special psychiatric

9  review technique" when evaluating a mental impairment's severity.  Id. § 404.1520a(a);

10  Chaudhry v. Astrue, 688 F.3d 661, 670 (9th Cir. 2012).  Using this technique, the ALJ

11  determines if a claimant has a medically determinable mental impairment.  20 C.F.R. §

12  404.1520a(b).  The ALJ then categorizes and rates the impairment in the following

13  functional areas: (1) understand, remember, or apply information; (2) interact with

14  others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  See

15  Chaudhry, 688 F.3d at 670; 20 C.F.R. § 404.1520a(c)(3).  The ALJ's decision must

16  "'Incorporate the pertinent findings and conclusions based on the technique' and

17  'include a specific finding as to the degree of limitation in each of the functional areas.'"

18  Id. § 404.1520a(c)(4); see also Chaudhry, 688 F.3d at 670.

19  Steps four and five consider a claimant's RFC assessment to determine if they can

20  perform relevant past or other available work.  20 C.F.R. § 404.1520(a)(4); see also

21  Garrison, 759 F.3d at 1011.  A claimant's RFC represents the most work a claimant can

22  perform given their limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ will consider "all

23  medically determinable impairments of which we are aware, including . . . medically

24  determinable impairments that are not 'severe'."  20 C.F.R. § 404.1545(a)(2).  "The RFC

25  therefore should be exactly the same regardless of whether certain impairments are

26  considered 'severe' or not."  Buck, 869 F.3d at 1040.  The Ninth Circuit has held that "an

27  RFC that fails to take into account a claimant's limitations is defective."  Valentine v.

28  Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).

### 3. The ALJ's findings

In step two, the ALJ acknowledged Plaintiff had medically determinable mental impairments of adjustment disorder with depression and anxiety.  (AR 106).  He found Plaintiff had "mild limitation[s]" in the four broad functional areas, and concluded the impairments were non-severe because they "do not cause more than minimal limitation in the claimant."  (Id.)  The ALJ supported his conclusion with evaluations from Neighborhood Healthcare, which noted Plaintiff "had coherent and linear thought process," "intact attention span and concentration" with "fair insight and judgement."  (Id.)  Treatment notes from other providers "noted her depression was mild."  (Id.)  The ALJ also cited the February 2022 examination by Jessica Durr Ph.D. who found Plaintiff's mental impairments were non-severe and mild in nature.  (AR 106–07.)  Lastly, the ALJ cited the August 2018 opinion of Dr. Aroon Suansilppongse and July 2020 opinion of Dr. Kevin Gregg who both found Plaintiff's limitations did not exceed "mild" in any of the four functional areas.  (AR 107.)

The ALJ found the Plaintiff had the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she has these non-exertional limitations: She can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. She needs to avoid concentrated exposure to extreme temperatures, loud noise, vibration, or strobe or flashing lights. She needs to avoid work at unprotected heights or around dangerous moving machinery. She can occasionally drive a motor vehicle.

(AR 108.)  The ALJ explained he considered all of Plaintiff's symptoms to the extent they could reasonably be accepted as consistent with the objective medical evidence and other evidence.  (Id.)  During his RFC assessment, the ALJ discussed Plaintiff's medical impairments of benign pituitary adenoma, vestibular disturbance syndrome with migraines, status post remote right ankle injury and surgery, and obesity.  (AR 109–12.)  The ALJ omitted discussion of Plaintiff's medically determinable mental impairments from the RFC assessment, instead stating the "[RFC] assessment

1 reflects the degree of limitation the undersigned has found in the 'paragraph B' mental

2 function analysis."  (AR 108.)

3     **4. Analysis**

4        **a. Substantial evidence supports the ALJ's conclusion that Plaintiffs**

5        **mental impairments were non-severe**

6     Plaintiff argues the ALJ erred by not considering Plaintiff's mental impairments

7 severe and the ALJ's finding was unsupported by substantial evidence.  (Mot. at 21.)

8     First, Plaintiff asserts that the ALJ erroneously relied on Dr. Durr's opinion because

9 it was "internally inconsistent."  (Mot. at 22.)  Plaintiff argues Dr. Durr's opinion that

10 Plaintiff can make "simplistic work-related decisions" means Plaintiff cannot make

11 complex decisions.  (Id.)  She claims that Dr. Durr's written statement is inconsistent

12 with the checkbox form, which indicated Plaintiff is capable of following "complex

13 instructions and making complex decisions."  (Id.)  The Commissioner contends the

14 additional checkbox form provides clarification to the written opinion rather than

15 creating an inconsistency.  (Opp'n at 18.)

16     The Ninth Circuit has held that "an ALJ is responsible for resolving conflicts in

17 medical testimony, and resolving ambiguity" and that "determining whether

18 inconsistencies are material (or are in fact inconsistencies at all) . . . fall within this

19 responsibility."  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595 (9th Cir. 1999).  An

20 inconsistency on the record requires "conflicting contemporaneous medical tests,

21 diagnoses, and testimony."  Christopherson v. Comm'r of Soc. Sec. Admin., 460 F. App'x

22 631, 633 (9th Cir. 2011).  Here, Dr. Durr's written opinion states that Plaintiff can

23 understand, remember, and carry out both simplistic and detailed instructions.  (AR

24 1123.)  Later on in her report, Dr. Durr checks "No" to the checkbox question that asks if

25 Plaintiff's "ability to understand, remember, and carry out instructions [are] affected by

26 the impairment[.]" (AR 1125.)  Although Plaintiff contends the checkbox form is

27 inconsistent with Dr. Durr's written opinion, the two are facially consistent.  Dr. Durr's

28 response to the checkbox question does not conflict with her prior written opinion

because she did not state that Plaintiff was unable to follow complex instructions; in fact, she stated Plaintiff was able to follow detailed instructions.  (<u>Compare</u> AR 1125 <u>with</u> AR 1123.)  Therefore, the ALJ's reliance on Dr. Durr's opinion must be upheld because his interpretation of the evidence was rational.  <u>See</u> <u>Tommasetti</u>, 533 F.3d at 1038.

Second, Plaintiff asserts that her records from Neighborhood Healthcare establish the presence of severe mental impairments.  (Mot. at 24.)  Although convoluted, Plaintiff appears to argue that the ALJ improperly analyzed medical records from Neighborhood Healthcare.  (<u>Id.</u> at 24-25.)  Plaintiff relies on her own reported symptoms and her PHQ-9 and GAD-7 scores to demonstrate her impairment was severe.[6]  (<u>Id.</u> at 24-26.)  The ALJ's assessment indicates he relied on the medical examiner's "BHC Mental Status Exams" and "Psychiatric Exams" from the same medical reports.  (AR 106, 1227, 1407–1408, 1462–1463.)  Here, a conflict seems to exist between the results of Plaintiff's self-reported symptoms and other medical exams.  For example, Plaintiff's GAD-7 score in one report indicates that her anxiety is "severe," meanwhile the psychiatric exam describes Plaintiff as depressed and anxious but relatively stable.  (<u>Compare</u> AR 1465-66 <u>with</u> AR 1467.)  This underscores a conflict in the evidence, but "[r]esolving conflicts is the ALJ's responsibility and prerogative."  <u>Owen v. Saul</u>, 808 F. App'x 421, 423 (9th Cir. 2020).  Indeed, an ALJ may reject a treating physician's opinion where (1) the opinion is based "to a large extent" on an applicant's self-reports and (2) the ALJ properly disbelieved those complaints.  <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1162 (9th Cir. 2014).  Here, the Plaintiff's reported symptoms, PHQ-9, and GAD-7 scores are based on Plaintiff's own reports.  (AR 1245, 1479.)  The ALJ had proper grounds to discredit Plaintiff's reports based on the mental status examinations at Neighborhood

---

[6] The GAD-7 and PHQ-9 scores are determined by asking the patient a series of questions regarding their symptoms, assigning each response a numerical value, then summing the value of the responses and interpreting the result.  (AR 1245, 1479.)

1  Healthcare, which described the symptoms as less severe than Plaintiff's self-report.

2  (AR 106.)

3      Lastly, Plaintiff argues the ALJ improperly relied on Dr. Aroon Suansilppongse's

4  findings because they were outdated and did not reflect Plaintiff's most recent medical

5  records.  (Mot. at 23.)  The Ninth Circuit's finding in <u>Owen</u> is particularly germane here;

6  the circuit court found that an ALJ did not err in giving a non-examining state agency

7  physician's opinion great weight even though the physician had not reviewed the most

8  recent evidence.  <u>Owen</u>, 808 F. App'x at 423.  The court explained that "there is always

9  some time lapse between a consultant's report and the ALJ['s] hearing and decision, and

10  the Social Security regulations impose no limit on such a gap in time."  (<u>Id.</u>)  Contrary to

11  Plaintiff's assertion, ALJ did not err when he relied on Dr. Suansilppongse's opinion,

12  despite it not including her most recent medical records.  Moreover, the ALJ properly

13  found the opinion was persuasive because it was supported by objective examinations

14  and was consistent with other medical evidence.  <u>See</u> 20 C.F.R. § 404.1520c(a)

15  (explaining the most important factors in evaluating persuasiveness are supportability

16  and consistency).  The ALJ committed no error in relying on Dr. Suansilppongse's

17  opinion.

18      Accordingly, the Court finds that the ALJ's decision to characterize Plaintiff's

19  medical impairments as non-severe is supported by substantial evidence and contains

20  no legal error.

21          **a.  The ALJ's failure to include Plaintiff's mental impairment in the RFC**

22              **assessment was reversible error.**

23      Although the Court affirms the ALJ's finding that Plaintiff's impairment was non-

24  severe, the ALJ neglected to discuss it at all during his RFC assessment, nor explained its

25  exclusion.  (AR 108–13.)  The Ninth Circuit has held that the ALJ's assessment must

26  include some discussion on how non-severe mental impairments affect the final RFC.

27  <u>Hutton v. Astrue</u>, 491 F. App'x 850, 850 (9th Cir. 2012); <u>see also</u> 20 C.F.R. §

28  404.1545(a)(2) ("We will consider all of your medically determinable impairments of

1  which we are aware, including your medically determinable impairments that are not

2  'severe'.").

3      Many courts within the circuit have reversed cases where the ALJ has failed to

4  analyze mental impairments in a claimant's RFC determination.  See Mercado v.

5  O'Malley, No. 2:22-CV-02155 AC, 2024 WL 967619, at *4 (E.D. Cal. Mar. 6, 2024)

6  (following Hutton and reversing an ALJ decision that did not consider mental limitations

7  in the RFC assessment); Jane B. for Judith F. v. O'Malley, No. 22-CV-1183-MMP, 2024 WL

8  1318858 at *9 (S.D. Cal. Mar. 27, 2024) (holding a claimant's mental impairments are

9  not inconsequential to an RFC determination and reversing.); Victor R. v. O'Malley, No.

10  23-CV-00501-GPC-BGS, 2024 WL 1257277 *9 (S.D. Cal. Mar. 25, 2024) ("the ALJ must

11  explicitly consider limitations caused by mild mental impairments in the RFC or explain

12  why such impairments are not limiting.").

13      Without this analysis, the court is unable to evaluate whether the ALJ properly

14  considered the Plaintiff's mental impairments in the RFC assessment.  Curtis v. Comm'r

15  of Soc. Sec. Admin., 584 F. App'x 390, 391 (9th Cir. 2014) ("we are unable to determine

16  on the record before us whether the ALJ adequately considered Curtis'[s] mental health

17  limitations.").  Plaintiff's non-severe mental impairments alone may not have

18  significantly limited her ability to work, but when combined with other limitations, her

19  ability to perform work may have been further restricted.  Titles II & Xvi: Assessing

20  Residual Functional Capacity in Initial Claims, SSR 96-8P *4 (S.S.A. July 2, 1996).

21      At the end of step two, the ALJ states "the following [RFC] assessment reflects the

22  degree of limitation the undersigned has found in the 'paragraph B' mental function

23  analysis."  (AR 108.)  This is insufficient because it does not satisfy the "more detailed

24  assessment" required in steps 4 and 5 during the RFC assessment, nor does it assist this

25  Court in determining how the Plaintiff's mental impairment was considered.  Titles II &

26  Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P *4 (S.S.A. July 2,

27  1996); see also Jane B., 2024 WL 1318858 at *9 ("boilerplate language that the RFC

28

1  assessment included all symptoms or incorporates the analysis from step two is

2  insufficient").

3       The Commissioner asserts that <u>Woods</u> confirms "non-severe mental impairments

4  do not require express findings in the RFC finding" and that the ALJ was not required to

5  explain why those limitations were included in the RFC.  (Opp'n at 19-20 (citing <u>Woods</u>

6  <u>v. Kijakazi</u>, 32 F.4th 785 (9th Cir. 2022).)  That is not the Court's reading of <u>Woods</u>.

7  While <u>Woods</u> does not require the RFC <u>itself</u> to expressly reflect mental limitations, it

8  does not absolve the ALJ from discussing non-severe mental limitations in the RFC

9  assessment.  32 F.4th at 794 ("The ALJ's assessment of her residual functional capacity

10  expressly reflected these limitations.").  And though the ALJ's ultimate RFC does not

11  need to account for Plaintiff's mental impairments, the ALJ must specify "'reasons

12  supported by substantial evidence' for not including any mental functional limitations

13  stemming from Plaintiff's non-severe mental impairments."  <u>Darren Jeffrey C. v. Kijakazi</u>,

14  No. 3:21-CV-01012-AHG, 2022 WL 4474261 at *10 (S.D. Cal. Sept. 26, 2022) (quoting

15  <u>Medlock v. Colvin</u>, No. CV 15-9609-KK, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20,

16  2016)).[7]  The ALJ's failure to include a discussion of Plaintiff's mild impairments in the

17  RFC assessment precludes this Court from properly determining whether the RFC was

18  supported by substantial evidence, which is evidenced in the VE's hearing testimony, as

19  explained below.

20       The Commissioner also argues that the ALJ adequately considered Plaintiff's

21  mental limitations when he asked the VE other hypotheticals related to mental health.

22  (Opp'n at 21.)   This issue is a close call.  Although the ALJ proposed a hypothetical that

23  limited "work involving simple routine tasks and only occasional interactions with the

24  public, supervisors, and coworkers," [AR 44], the Court is uncertain whether that

25

26  [7] Although the Commissioner cites two cases to support its interpretation that <u>Woods</u> does not require
    the ALJ to explain why he did not include a non-severe impairment, this Court respectfully disagrees
27  with those decisions.  (Opp'n at 20) (citing <u>Hilda V. A. v. Kijakazi,</u> 2023 WL 1107867, at *4 n.3 (C.D. Cal.
    Jan. 30, 2023); <u>Tyson v. Kijakazi</u>, 2023 WL 2313192, at *4 (E.D. Cal. Mar. 1, 2023)).   As explained <u>supra</u>,
28  there are many other courts who follow this Court's line of reasoning.

1  sufficiently incorporates Plaintiff's mild mental impairments. Indeed, the ALJ went

2  further in asking whether any jobs would exist for someone who developed a pattern of

3  calling in sick and missing work two full days a month. (AR 46.) The VE opined that

4  hypothetical would eliminate all competitive employment. (Id.) As the ALJ notes in his

5  decision, Dr. Durr reported that Plaintiff "is at risk for calling in sick, not showing up, or

6  needing to leave early." (AR 107.) The ALJ also found Dr. Durr's opinion persuasive.

7  (Id.) Nonetheless, the ALJ did not include any mental impairment in Plaintiff's RFC nor

8  explained why it was excluded, which leads the Court to wonder if the ALJ purposefully

9  left out Plaintiff's mental impairment or simply forgot to include it. Ultimately, the

10  Court cannot conclude that the ALJ's failure to discuss Plaintiff's mental impairments

11  was harmless because it could have resulted in a disability finding. See Marsh v. Colvin,

12  792 F.3d 1170, 1173 (9th Cir. 2015) ("ALJ errors in social security cases are harmless if

13  they are 'inconsequential to the ultimate nondisability determination' . . . .") (quoting

14  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir.2006)). Because the

15  ALJ's error was not harmless, the Court recommends that this issue be reversed and

16  remanded.

### VI.    CONCLUSION

17

18  For the foregoing reasons, the Court **RECOMMENDS** that judgment be entered

19  **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further

20  administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). On remand,

21  the Court specifically directs the ALJ to address Plaintiff's mental impairments in the RFC

22  analysis. Because a new RFC determination could necessarily impact other findings,

23  upon remand the ALJ should also conduct a new five-step sequential evaluation process.

24  See 20 C.F.R. § 404.1520.

25  **IT IS ORDERED** that no later than **July 11, 2025**, any party to this action may file

26  written objections with the Court and serve a copy on all parties. The document should

27  be captioned "Objections to Report and Recommendation."

28  //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS FURTHER ORDERED** that any response to the objections shall be filed with the Court and served on all parties no later than **July 25, 2025**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  June 13, 2025

Honorable Michael S. Berg
United States Magistrate Judge

24cv1452-CAB (MSB)